# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Terry Walker McLaughlin,<br><br>            Plaintiff,<br><br>v.<br><br>Children's Safety Centers, Genesis II, FamilyWise Services, and Richard Bents individually,<br><br>            Defendants. | Case No. 12-cv-01746 (SRN/JJG)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Jeffrey D. Schiek, Lisa McLeod-Lofquist, and Philip G Villaume, Villaume & Schiek, P.A., 2051 Killebrew Drive, Suite 611, Bloomington, Minnesota 55425, for Plaintiff.

Jessica L. Edwards, Norah E. Olson Bluvshtein, and Teresa M. Thompson, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota 55402-1425, for Defendants Children's Safety Centers, Genesis II, and FamilyWise Services.

Joseph B. Nierenberg, Nierenberg Employment Law, PLLC, 701 Fourth Avenue South, Suite 500, Minneapolis, Minnesota 55415-1818 for Defendant Richard Bents.

---

SUSAN RICHARD NELSON, United States District Judge

       This matter came before the Court on Defendants Children's Safety Centers, Genesis II, and FamilyWise Services' Motion to Dismiss Counts I through VII of Plaintiff's Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. Nos. 6, 28.][1] Also before the Court is Defendant Richard Bents'

---

[1] After Defendants Children's Safety Centers, Genesis II, FamilyWise and Bents filed their Motions to Dismiss on August 9, 2012, the parties entered into a stipulation to allow Plaintiff to file and serve an Amended Complaint to "reflect the fact that Plaintiff has now received a right-to-sue letter from the EEOC." (Ltr. to Dist. Ct. [Doc. No. 27].)

Motion to Dismiss Count VIII of Plaintiff's Amended Complaint for failure to state a claim. [Doc. Nos. 12, 28.] For the reasons that follow, the Court grants in part and denies in part Defendants Children's Safety Centers, Genesis II, and FamilyWise Services' Motion to Dismiss and denies Defendant Bents' Motion to Dismiss.

## I.    BACKGROUND

Defendant Children's Safety Center ("CSC"),[2] is a private, non-profit organization that offers programming and services to children, adults, and families in the Twin Cities area. (Am. Compl. ¶¶ 2–4 [Doc. No. 29].) Defendant CSC hired Plaintiff in November of 1997 to work as the organization's Executive Director. (Id. 7, 9.) Defendant Richard Bents owns Future Systems Consulting, Inc., a Minnesota organization, which provided consulting services to Defendant CSC. (Id. ¶ 5.)

Plaintiff alleges that in her 2009 performance evaluation, Defendant CSC commended her for "her ability to energize and motivate those around her; being able to stabilize the accounting position; being creative in Defendant's funding sources and solutions; and being an asset to the Defendant [sic] business." (Id. ¶ 11.) While Plaintiff was criticized for "not being enthusiastic during hard situations," Defendant CSC stated in

---

The parties agreed that "Defendants' previously filed Rule 12 Motions . . . need not be re-filed and may be treated as Motions to Dismiss the Amended Complaint." (Id.) The Court approved the parties' stipulation on September 19, 2012. (Order on the Parties' Stip. [Doc. No. 28].)

[2]    Effective January 1, 2012, CSC merged with Genesis II. (Def. CSC's Mem. in Supp. of Mot. to Dismiss at 1 n.1 [Doc. No. 8].) The merged entities "operated under the name Genesis II for Families for a period of a few months and has since become known as FamilyWise Services." (Id.) The Court will refer to these entities as CSC throughout this Order.

her review that it "had complete confidence in her ability to guide CSC into the next decade." (Id.)

On or about October 11, 2010, Plaintiff was placed on a written performance action plan due to her alleged mistreatment of fellow employees and her management style. (Id. ¶ 12; Affidavit of Jessica L. Edwards ("Edwards Aff.") [Doc. No. 9] Ex. A (hereinafter referred to as the "Charge"), ¶ 5(a).)[3] Plaintiff alleges that Defendant Bents assisted Defendant CSC in creating the performance action plan. (Am. Compl. ¶ 13.)

On or about October 20, 2010, Plaintiff complained to Defendant CSC that she had been subjected to sexual harassment by a "male vendor"—Defendant Bents—for "approximately one year." (Id. ¶ 14; Charge ¶ 5(a).) Plaintiff claims that Defendant CSC informed her that an investigation would be completed regarding Defendant Bents' alleged harassment. (Am. Compl. ¶ 14.) To Plaintiff's knowledge, however, no investigation or remedial action occurred. (Id.) Plaintiff continued as Executive Director of Defendant CSC for a year following her sexual harassment complaint and during that year she "was not required to work" with Defendant Bents. (Charge ¶ 5(a).)

In January 2011, Plaintiff claims that "as a result of the inaction of Defendant CSC regarding the aforementioned sexual harassment, [she] wrote an email to Defendant Bents with instructions to discontinue services with Defendant CSC." (Am. Compl. ¶ 19; Charge

---

[3] The Court notes that it may consider Plaintiff's Charge filed with the Minnesota Department of Human Rights on a motion to dismiss without converting the motion to one for summary judgment. See Faibisch v. Univ. of Minn., 304 F.3d 797, 802–03 (8th Cir. 2002); Henke v. Allina Health Sys., 698 F. Supp. 2d 1115, 1121–22 (D. Minn. 2010).

¶ 5(c).)  Plaintiff included several current, former, and prospective Defendant CSC board members on the e-mail.  (Id.)  Plaintiff was subsequently reprimanded for "including the former and prospective board members" on the e-mail list.  (Id.)

In February 2011, Plaintiff was informed that the requirements of her action plan had been met and that the action plan would be lifted.  (Am. Compl. ¶ 23; Charge ¶ 5(d).)  On or about October 7, 2011, a year after Plaintiff was placed on the performance action plan, the President of CSC's Board, David Chisnell, met with Plaintiff to conduct her annual performance review.  (Am. Compl. ¶ 25; Charge ¶ 5(e).)  During the meeting, Chisnell discussed problems with Plaintiff's job performance, including "lack of management and people skills," "staff retention issues," and failure "to make progress as set forth in the action plan."  (Charge ¶ 5(e).)

Around October 10, 2011, Plaintiff spoke with the Minnesota Department of Human Rights ("MDHR") to discuss allegations of discrimination against Defendant CSC.  (Am. Compl. ¶ 26.)  The next day, Plaintiff informed a board member that she had met with the MDHR.  (Id. ¶ 27.)  Shortly thereafter, on October 13, 2011, Plaintiff was informed by Chisnell that her position as Executive Director would be terminated, and she was offered the choice to either take a temporary position as Transition Director for up to six months or accept a separate package of four weeks' severance pay.  (Id. ¶ 28.)  Plaintiff inquired whether she was being terminated pursuant to Defendant CSC's bylaws, but Chisnell did not respond.  (Id.)  Plaintiff refused to choose between the Transition Director position and the separation package, so her employment with Defendant CSC terminated effective October 14, 2011.  (Id.)

On November 1, 2011, Plaintiff filed a Charge of Discrimination with the MDHR and it was automatically cross-filed with the EEOC. (Id. ¶¶ 29, 32.) In her Charge, Plaintiff alleged that Defendant CSC had engaged in reprisal discrimination in violation of § 363A.15(1) of the MHRA. (Charge ¶ 4.) The Charge did not include a claim of sexual harassment or any other unlawful practice. (Cf. id. ¶¶ 1–5.) Neither the EEOC nor the MDHR issued any findings on Plaintiff's Charge. On May 25, 2012, Plaintiff received a letter from the MDHR, notifying her that all proceedings relating to the Charge would be terminated because she had withdrawn her Charge to pursue civil litigation. (Am. Compl. ¶ 31; Edwards Aff. Ex. B). On September 12, 2012, Plaintiff received a notice of dismissal of the Charge from the EEOC and was provided with a notice of her right to file suit. (Am. Compl. ¶ 33.)

Plaintiff commenced the present action in state court against Defendant CSC on June 29, 2012. (Compl. [Doc. No. 1-1].) Plaintiff's Complaint alleged the following claims against Defendant CSC: (1) sexual harassment under the MHRA; (2) reprisal under the MHRA; (3) violation of the Whistleblower Act, Minn. Stat. § 181.932; (4) reprisal under the Whistleblower Act, Minn. Stat. § 181.932 ; (5) sexual harassment under Title VII; (6) retaliation under Title VII; and (7) sexual harassment in violation of 42 U.S.C. § 1983. (Id. ¶¶ 32–98.) Plaintiff also asserted claims of assault and battery against Defendant Bents individually. (Id. ¶¶ 99–103.) Defendant CSC removed the action to this Court on July 19, 2012 based on federal question jurisdiction. (Notice of Removal [Doc. No. 1].) Plaintiff subsequently filed an Amended Complaint on September 20, 2012 to reflect the fact that she had received a right-to-sue letter from the EEOC. (Ltr. to Dist. Court [Doc. No. 27]; Am.

Compl. ¶ 33.)  Defendant CSC and Defendant Bents filed separate Motions to Dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on August 9, 2012.  [Doc. Nos. 6, 12, 28.]

## II.      DISCUSSION

### A.      Standard of Review

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief."  To meet this standard, and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.''  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 593 (2009) (citation omitted).  It is not, however, a "probability requirement."  Id.  (citation omitted).  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'"  Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Several principles guide courts in determining whether a complaint meets this standard. First, the court must take the plaintiff's factual allegations as true and grant all reasonable inferences in favor of the plaintiff. Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009). This tenet does not apply, however, to legal conclusions or "formulaic recitation of the elements of a cause of action;" such allegations may properly be set aside. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). In addition, some factual allegations may be so indeterminate that they require "further factual enhancement" in order to state a claim. Id. (quoting Twombly, 550 U.S. at 557.) Finally, the complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 558 F.3d at 594.

"[D]ismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Semler v. Kland, 603 F. Supp. 2d 1211, 1220 (D. Minn. 2009) (quoting Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001)). Dismissal is appropriate, for instance, where it is clear from the complaint that a claim is barred by the statute of limitations, Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008), or where a plaintiff fails to exhaust administrative remedies that are a prerequisite to suit, Brooks v. Midwest Heart Grp., 655 F.3d 796, 801 (8th Cir. 2011).

Evaluation of the sufficiency of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679). A court may consider the

complaint, matters of public record, orders, materials embraced by the complaint, and

exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).

Porous MediaCorp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  Plaintiff's

Charge and notice of withdrawal from the MDHR are such documents.  See Faibisch v.

Univ. of Minn., 304 F.3d 797, 802–03 (8th Cir. 2002); Henke v. Allina Health Sys., 698

F. Supp. 2d 1115, 1121–22 (D. Minn. 2010).

### B.     Plaintiff's Sexual Harassment Claims

#### 1.     Sexual Harassment Claim under Title VII of the Civil Rights Act

Defendant CSC moves to dismiss Count V of Plaintiff's Amended Complaint,

asserting a claim for sexual harassment under Title VII of the Civil Rights Act.  Before

filing suit, a Title VII plaintiff must follow the statutorily prescribed administrative

procedure so that the EEOC is provided the first opportunity to investigate alleged

discriminatory practices and to perform its role of obtaining voluntary compliance and

promoting conciliatory efforts.  Williams v. Little Rock Mun. Water Works, 21 F.3d 218,

222 (8th Cir. 1994) (citing Patterson v. McLean Credit Union, 491 U.S. 164, 180–81

(1989)).  To exhaust such administrative remedies, the plaintiff must: (1) timely file a

charge of discrimination with the EEOC setting forth the facts and nature of the charge; and

(2) receive notice of the right to sue.  Id.  Claims of discrimination raised in a judicial

complaint which were not previously raised in an EEOC charge, or are not "like or

reasonably related to" such EEOC claims, are deemed not to be exhausted and are thus

barred from judicial review.  Id. at 222–23.  To allow a complaint to encompass allegations

outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge. Id. at 223; see also Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1025 (8th Cir. 2004), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011)).

On November 1, 2011, Plaintiff filed a Charge of Discrimination with the MDHR, which was cross-filed with the EEOC. Plaintiff's Charge claimed only that "Respondent has discriminated against me in the area of reprisal in violation of Minnesota Statutes, § 363A.15(1)." (Charge at 2.) Plaintiff's Charge did not list "sexual harassment" as a basis for her claim against Defendant CSC. (Cf. id.) Defendant CSC argues that Plaintiff's sexual harassment claim, therefore, is outside the scope of the administrative charge and cannot be litigated in this action. (Def. CSC's Mem. at 7–10 [Doc. No. 8].)

Plaintiff counters that the sexual harassment claim is like or reasonably related to the substance of her retaliation allegations in the administrative charge. (Pl.'s Opp'n Mem at 17–20 [Doc. No. 18].) Plaintiff specifically references the factual allegations in her Charge, which states:

> I believe I was subjected to acts of reprisal because I made a complaint of sexual harassment against a male vendor who contracted with the respondent. After I made my complaint, the respondent made it impossible for me to meet the requirements I was given in the action plan.

(Id.; Charge at 2.) Based on these statements in her Charge, Plaintiff claims that she has fully exhausted her administrative remedies with the EEOC as it pertains to her Title VII sexual harassment claim. (Pl.'s Opp'n Mem. at 20 [Doc. No. 18].)

The Court agrees with Defendant that Plaintiff's allegations contained in her Charge

for retaliation are not like or reasonably related to a claim of sexual harassment.  In <u>Duncan</u> <u>v. Delta Consolidated Industries, Inc.</u>, 371 F.3d 1020 (8th Cir. 2004), the plaintiff marked the box on her administrative charge indicating a claim for "retaliation," and her narrative provided: "I reported my supervisor for sexual harassment . . . . Since reporting the sexual harassment I have been subjected to different terms and conditions of employment . . . ."  <u>Id.</u> at 1023–24.  When she later filed a lawsuit claiming both retaliation and sexual harassment, she argued that her harassment claim was sufficiently related to her retaliation claim that it was encompassed by her charge.  <u>Id.</u> at 1025.  The Eighth Circuit disagreed, and stated:

> The particulars of the EEOC complaint make clear that [plaintiff] was alleging retaliation for having complained about sexual harassment . . . . She did not provide any details concerning any ongoing harassment, and the reference to past harassment is simply insufficient to put the EEOC or [defendant] on notice of the charge.  [Plaintiff], therefore, did not exhaust her sexual discrimination claim.

<u>Id.</u> at 1026.  The court also noted that it is "well-settled that charges of sexual harassment generally are not like or reasonably related to retaliation charges for complaining about antecedent harassment."  <u>Id.</u> at 1025 (citation omitted).

As in <u>Duncan</u>, Plaintiff marked her Charge form by stating that she was discriminated against only in the area of reprisal.  (Charge ¶ 4.)  Likewise, in the narrative portion of the Charge, Plaintiff explained that "I believe I was subjected to acts of reprisal because I made a complaint of sexual harassment."  (Charge at 2.)  Plaintiff's Charge does not contain any details about ongoing harassment at Defendant CSC and specifically stated that she had no contact with her alleged harasser after she reported the conduct to Defendant CSC.  Furthermore, the mere mention of the phrase "sexual harassment" in her Charge

regarding an outside vendor is hardly sufficient to support a Charge for sexual harassment against her employer. Accordingly, the Court determines that as in <u>Duncan</u>, Plaintiff here has failed to exhaust her administrative remedies on her Title VII sexual harassment claim. Defendant's Motion to Dismiss Count V of Plaintiff's Amended Complaint is therefore granted.[4]

### 2. Sexual Harassment Claim under the Minnesota Human Rights Act

Count I of Plaintiff's Amended Complaint asserts a claim for sexual harassment under the Minnesota Human Rights Act ("MHRA"). In contrast to her Title VII claim, Plaintiff need not exhaust her administrative remedies as to her MHRA claim so long as she files an administrative charge or brings a lawsuit within one year of "the occurrence of the practice." Minn. Stat. § 363A.28, subd. 3; <u>see also</u> <u>St. Martin v. City of St. Paul</u>, 680 F.3d 1027, 1034 (8th Cir. 2012). In <u>Turner v. IDS Fin. Servs., Inc.</u>, 471 N.W.2d 105 (Minn. 1991), the Minnesota Supreme Court explained that when construing the phrase "occurrence of the practice," courts should examine "the discriminatory act rather than when the consequences of that act become most painful." <u>Id.</u> at 107–08.

In MHRA cases, however, the continuing violation doctrine acts as an exception to

---

[4]     To the extent Plaintiff argues that the Court should grant her leniency because she filed her Charge <u>pro se</u>, (Pl.'s Opp'n Mem. at 18 [Doc. No. 21]), that argument is unavailing. The Eighth Circuit has held that while courts should "construe civil rights and discrimination claims charitably [for <u>pro se</u> civil litigants] . . . there is a difference between liberally reading a claim which 'lacks specificity,' and investing, <u>ex nihilo</u>, a claim which simply was not made." <u>Duncan</u>, 371 F.3d at 1025. As such, the Court concludes that no reasonable reading of Plaintiff's Charge can show she was making a claim for sexual harassment.

the MHRA statute of limitations and allows a complainant to hold an employer liable for a series of related acts of sexual harassment if "the unlawful employment practice manifests itself over time." Costilla v. State, 571 N.W.2d 587, 593 (Minn. Ct. App. 1997) (citation omitted).  In order for this doctrine to apply, a plaintiff "must show that at least one incident of sexual harassment occurred within the limitations period."  See id. (citation omitted).

Defendant contends that the MHRA's one-year statute of limitations bars Plaintiff's sexual harassment claim.  (Def. CSC's Mem. at 10–11 [Doc. No. 8].)  Specifically, Defendant argues that Plaintiff reported sexual harassment by Defendant Bents to Defendant CSC sometime around October 20, 2010.  (Id.)  Plaintiff does not allege any contact with Defendant Bents following this report of harassment, aside from the e-mail she sent to him in January 2011.  (Id.)  Plaintiff states in her Charge that she did not continue working with Defendant Bents after October 20, 2010.  (Id.)  Plaintiff did not make any claim for sexual harassment until she commenced the instant action on June 29, 2012— which is over a year and a half since the harassment ended.  (Id.)

Plaintiff responds that her claim under the MHRA for sexual harassment is not time-barred because the statute of limitations did not begin to run until she suffered an adverse employment action.  (Pl.'s Opp'n Mem. at p 15 [Doc. No. 18].)  Because she was terminated on October 14, 2011 and commenced this action on June 29, 2012, Plaintiff asserts that her MHRA sexual harassment claim is not time-barred.  (Id.)  Plaintiff also contends that Defendant Bents' sexual harassment qualifies as a continuing violation because "she continually reported violations of sexual harassment to upper management, which included reporting of sexual harassment three days before her termination."  (Id. at

16.)

The Court finds that Plaintiff's claim against Defendant CSC for sexual harassment under the MHRA is time-barred. Plaintiff stated that she was not a victim of sexual harassment after October 20, 2010 and her Complaint was filed on June 29, 2012, which is more than a year after "the occurrence of the practice." Furthermore, to the extent Plaintiff is arguing her sexual harassment claims are not time-barred because the limitations period did not begin to run until Defendant CSC took "adverse employment action," this argument fails because the limitations period is based on when the discriminatory act occurred. See Turner, 471 N.W.2d at 108. Plaintiff's continuing violation argument is unsuccessful because she filed this lawsuit on June 29, 2012, and she therefore must demonstrate that at least one incident of sexual harassment occurred after June 29, 2011. See Costilla, 571 N.W.2d at 593. Plaintiff has stated, however, "[t]he last act of sexual harassment by Bents occurred on October 20, 2010." (Pl.'s Opp'n Mem. at 21 [Doc. No. 18].) Thus, according to Plaintiff, no act of sexual harassment by Defendant Bents occurred during the limitations period. Accordingly, Plaintiff's sexual harassment claim under the MHRA is barred under the statute of limitations and the Court grants Defendant's Motion to Dismiss Count I of Plaintiff's Amended Complaint.

### C.     Plaintiff's Minnesota Whistleblower Act Claims

Counts III and IV of Plaintiff's Amended Complaint allege that Defendant CSC violated the Minnesota Whistleblower Act. The Whistleblower Act prohibits an employer from firing an employee because the employee, acting in good faith, reported a suspected violation of a federal or state law. Minn. Stat. § 181.932, subd. 1. The MHRA exclusivity

provision states "as to acts declared unfair by sections 363A.08 to 363A.19, and 363A.28, subdivision 10, the procedure herein provided shall, while pending, be exclusive." Minn. Stat. § 363A.04. Thus, "an employee may not seek redress for the same allegedly discriminatory practices on the same facts under both the MHRA and the Whistleblower Act." Abraham v. Cnty. of Hennepin, 639 N.W.2d 342, 347 (Minn. 2002) (citing Williams v. St. Paul Ramsey Med. Ctr., 551 N.W.2d 483, 486 (Minn. 1996)).

In Williams, the plaintiff asserted claims against her former employer for reprisal under the MHRA and for a violation of the Minnesota Whistleblower Act. 551 N.W.2d at 484. The court addressed whether she could maintain a Whistleblower claim alongside her MHRA reprisal claim and determined that:

> [T]he legislature could not have contemplated that employees seeking redress for allegedly discriminatory employment action [sic] could simultaneously maintain an action relating to the same allegedly discriminatory practice and predicated on identical factual statements and alleging the same injury or damages. The language of the Act does not support such an interpretation and we decline to judicially fashion such relief. . . . [T]he exclusivity provision of the [MHRA] operates as a bar to the separate maintenance of this claim under the Whistleblower Act.

Id. at 485–86; see also Wesman v. UPS, Inc., No. 08-cv-457, 2008 WL 2564458, at *4 (D. Minn. June 24, 2008) ("[Plaintiff] seeks relief under the Whistleblower Act pursuant to the same facts and alleged discriminatory practices as his MHRA claims. Therefore, the MHRA provides his exclusive remedy, and his Whistleblower Act claim is dismissed); McKenzie v. Rider Bennett, LLP, No. 05-cv-1265, 2006 WL 839498, at *5 (D. Minn. Mar. 28, 2006) (dismissing a plaintiff's whistleblower claim under the MHRA's exclusivity provision because it was essentially identical to the MHRA claim).

In this case, Plaintiff's claims under the MHRA and the whistleblower statute are essentially identical.  Under <u>Williams</u>, the MHRA's exclusive remedy provision bars Plaintiff's whistleblower claim.  The Court therefore dismisses Counts III and IV of Plaintiff's Amended Complaint alleging Minnesota Whistleblower Act violations.[5]

### D.  Plaintiff's 42 U.S.C. § 1983 Claim

Defendants move to dismiss Count VII of Plaintiff's Amended Complaint alleging a 42 U.S.C. § 1983 violation.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1983.

The first element required for a § 1983 claim is a determination of "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States."  <u>Doe v. Wright</u>, 82 F.3d 265, 268 (8th Cir. 1996) (quoting <u>Martinez v. California</u>,

---

[5]     Plaintiff also argues that the Court should find the MHRA's exclusivity provision unconstitutional under the Minnesota Constitution's Equal Protection Clause.  (Pl.'s Opp'n Mem. at 24–27 [Doc. No. 18].)  The Minnesota Supreme Court has stated that "the power of this court to declare a statute unconstitutional is to be exercised only when absolutely necessary, and then with extreme caution.  Furthermore, a statute will not be declared unconstitutional unless the party challenging it demonstrates beyond a reasonable doubt that the statute violates some constitutional provision."  <u>Wegan v. Vill. of Lexington</u>, 309 N.W.2d 273, 279 (Minn. 1981) (internal citations and quotations omitted).  Plaintiff has failed to identify any case law demonstrating that the MHRA's exclusivity provision violates the Minnesota Constitution's Equal Protection Clause.  As such, the Court determines that Plaintiff has not demonstrated beyond a reasonable doubt that the MHRA's exclusivity provision violates the Minnesota Constitution.

444 U.S. 277, 284 (1980)).  The second element for a § 1983 claim is that "'the alleged deprivation was committed by a person acting under color of state law.'"  Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful. . . ."  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citation and marks omitted).  To be deemed a state actor, the action of a private actor must be "'fairly attributable to the State,' that is . . . that 'the party charged with the deprivation [was] a person who may fairly be said to be a state actor.'"  Nichols v. Metro. Ctr. for Indep. Living, Inc., 50 F.3d 514, 517 (8th Cir. 1995) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (citation omitted)).

If this Court finds that Defendant CSC is not a state actor, it lacks subject matter jurisdiction to hear Plaintiff's § 1983 claim.  See, e.g., Smith v. Univ. of Minn. Med. Ctr.-Fairview Riverside, No. 09-cv-293, 2010 WL 3893902, at *11 (D. Minn. July 14, 2010) ("Where [plaintiff] has failed to allege facts to support his assertion that [defendants] were state actors for the purposes of his § 1983 claim, this Court concludes that their motion to dismiss his § 1983 claim should be granted and should be dismissed with prejudice.");  Franco v. Grant, No. 09-cv-552, 2010 WL 653855, at *5 (D. Minn. Feb. 22, 2010) ("Nothing in the Complaint demonstrates the necessary close nexus between the state action and the challenged action such that [defendant's] conduct may be fairly treated as that of a state actor, subjecting it to liability under § 1983.");  Major v. Stocker, Smith, Lucianti & Staub, No. CV–09–0140–FVS, 2009 WL 2595594, at *3 (E.D. Wash. Aug. 19, 2009)

("Because Defendants did not act under color of state law and Plaintiffs' allegations are insufficient to turn Defendants into state actors, the Court lacks subject matter jurisdiction over the individual Defendants pursuant to § 1983.").

Defendant CSC is a charitable organization with its main office located in St. Paul, Minnesota. (Am. Compl. ¶¶ 2–4.) As a private entity, Defendant CSC may not be liable under § 1983, absent a showing that its conduct amounted to "state action." Nothing in Plaintiff's Amended Complaint demonstrates that Defendant CSC was a state actor, that there was a close nexus between its actions and the state such that its conduct could be fairly attributed to the state, or that it ever had a mutual understanding with a state actor on any topic. Indeed, Plaintiff makes no allegations that implicate state action or state involvement in any way. Accordingly, the Court grants Defendant's Motion to Dismiss Count VII of Plaintiff's Amended Complaint.[6]

---

[6] While not raised in Plaintiff's Amended Complaint, Plaintiff argues in her Memorandum that because Defendant CSC receives government funding and other incentives, it qualifies as a state actor for purposes of § 1983. (Pl.'s Opp'n Mem. at 28–31 [Doc. No. 18].) In determining whether a private actor's conduct can be attributed to the state for purposes of § 1983, courts consider four factors: "the extent of state regulation, the receipt of public funds, the type of function involved, and the presence of a symbiotic relationship." Sinn v. The Daily Nebraskan, 829 F.2d 662, 665 (8th Cir. 1987) (citation omitted). The Court determines that even if Plaintiff plead the facts she offered in her memorandum, they do not rise to the level of state action required for a § 1983 claim. Indeed, private conduct is only deemed state action if "there is a sufficiently close nexus between the State and the challenged action . . . so that the action of the latter may be fairly treated as that of the State itself." Jackson v. Metro. Edison Co., 419 U.S. 345, 350–51 (1974). Plaintiff has not alleged that the state had any involvement with Defendant CSC's challenged conduct related to her retaliation claims, and therefore Plaintiff cannot sustain her § 1983 claims against Defendant CSC.

## E.    Plaintiff's Retaliation and Reprisal Claims[7]

Defendant CSC argues that the Court should Dismiss Counts II and VI of Plaintiff's Amended Complaint alleging claims for retaliation and reprisal. To state a claim for retaliation (or reprisal),[8] Plaintiff must allege facts showing that: "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." Wells v. SCI Mgmt., L.P., 469 F.3d 697, 702 (8th Cir. 2006) (citation omitted).

Plaintiff alleges in her Amended Complaint that, throughout her employment with Defendant CSC, she "performed the job in a manner which fully met Defendant CSC's legitimate expectations." (Am. Compl. ¶ 51.) Plaintiff also claims that "[o]n numerous occasions during her employment, [she] reported and opposed the sexual harassment she was subjected to by Bents, a third-party vendor, during the course of conducting Defendant CSC's business." (Id. ¶ 52.) Plaintiff states that because she "opposed and reported sexual

---

[7]    Defendant CSC urges the Court to dismiss Plaintiff's Title VII retaliation claim arguing that she failed to exhaust her administrative remedies because she did not receive a right to sue letter from the EEOC. (Def. CSC's Mem. at 16 [Doc. No. 8].) After Defendant CSC filed its Motion to Dismiss, on August 9, 2012, Plaintiff received a notice of right to sue from the EEOC. (Stipulation to Amend Complaint [Doc. No. 26].) Plaintiff then filed an Amended Complaint pursuant to a stipulation between the parties and approved by the Court to reflect this fact on September 20, 2012. (Am. Compl. [Doc. No. 29]; Stipulation [Doc. No. 26]; Order on the Parties' Stip. [Doc. No. 28].) As such, the Court determines that Defendant CSC's argument that Plaintiff failed to exhaust her administrative remedies for her Title VII retaliation claim is now moot.

[8]    Although the MHRA uses the term "reprisal," while Title VII uses "retaliation," MHRA reprisal claims are "analyzed in the same fashion" as retaliation claims under federal employment statutes. Carraher v. Target Corp., No. 05-2385, 2006 WL 2882345, at *7 n.13 (D. Minn. Oct. 5, 2006). The Court uses the terms interchangeably.

harassment on or about October 20, 2010, Defendant CSC retaliated against [her] . . . [by] mak[ing] false accusations about her, creat[ing] a hostile and intolerable work environment, subject[ing] her to false disciplinary actions, and ultimately terminat[ing] her employment for false and pretextual reasons." (Id. ¶¶ 55, 87.) Furthermore, Plaintiff alleges that "on or about October 11, 2011, [she] informed Defendant CSC of her intention to file a formal complaint with a governmental agency and in retaliation, Defendant CSC terminated her employment." (Id. ¶¶ 56, 86.)

Defendant CSC argues that Plaintiff's allegations in her Amended Complaint are merely conclusory and do not plead sufficient facts to support claims of retaliation. (Def. CSC's Mem. at 17–18 [Doc. No. 8].) Defendant CSC also claims that Plaintiff has failed to plead a causal link establishing that a "retaliatory motive played a part in the adverse employment action." (Id. at 18) (citation omitted).

In support of this argument, Defendant CSC cites Duncan v. LaSalle Mgmt. Grp. Ltd., No. 09-cv-1574, 2010 WL 276242, at *1 (D. Minn. Jan. 15, 2010). In Duncan, the plaintiff was a sixty-four year old African-American man who was hired as a full time building caretaker by the defendant on April 24, 2008. Id. On his first day, the plaintiff went to the building he was hired to work in and his co-worker did not show up. Id. The plaintiff then called the defendant's human resources representative and "complained about [his co-worker's] failure to meet him." Id. The plaintiff then attended a orientation for the position on April 28, 2008. Id. On May 1, 2008, the defendant terminated plaintiff's employment, stating that he was an at-will employee and was letting him go "simply because it did not work out." Id. The plaintiff then filed a complaint against defendant

alleging reprisal in violation of Title VII and the MHRA.  Id.  The court granted defendant's

motion to dismiss the plaintiff's reprisal claim because "[t]he mere fact that [plaintiff] was

terminated four business days after complaining to [the defendant's human resources

representative] does not suffice to show retaliatory motive."  Id.  at *3.  Indeed, the court

stated that the plaintiff offered "no other evidence to support a finding that his termination

was caused by his April 24, 2008, complaint."  Id.

Unlike Duncan, Plaintiff here has pled evidence demonstrating that Defendant CSC

retaliated against her for reporting Defendant Bents' alleged sexual harassment.  Plaintiff

plausibly alleges that Defendant CSC tolerated Defendant Bents' sexual harassment and

subjected her to retaliation once she complained of this conduct.  Plaintiff also plausibly

alleges that after she informed a board member of Defendant CSC that she intended to

engage in protected conduct by filing a complaint with a governmental agency regarding

Defendant Bents' alleged harassment, Defendant CSC terminated her employment days

later.

While as Defendant CSC stresses that "temporal proximity alone is generally

insufficient to raise a triable issue of material fact on retaliatory motive," Flowers v. City of

Minneapolis, 558 F.3d 794, 800 (8th Cir. 2009), the Eighth Circuit has concluded that

"temporal proximity may directly support an inference of retaliation, and it may also affect

the reasonableness of inferences drawn from other evidence."  Wallace v. DTG Operations,

Inc., 442 F.3d 1112, 1122 (8th Cir. 2006), abrogated on other grounds by Torgerson, 643

F.3d at 1031.  In addition, "[w]here an employer tolerates an undesirable condition for an

extended period of time, and then, shortly after the employee takes part in protected

conduct, takes an adverse action in purported reliance on the long-standing undesirable condition, a reasonable jury can infer the adverse action is based on the protected conduct." Fitzgerald v. Action, Inc., 521 F.3d 867, 875 (8th Cir. 2008). This is precisely the situation here because three days after Plaintiff informed Defendant CSC that she was going to report Defendant Bents' alleged sexual harassment to a governmental agency, Defendant CSC terminated her position with the company. Accordingly, the Court finds that Plaintiff's factual assertions are sufficient to provide fair notice of her claims of retaliation and therefore denies Defendant CSC's Motion to Dismiss Counts II and VI of Plaintiff's Amended Complaint.

## F.  Plaintiff's Assault and Battery Claims

Defendant Bents moves to dismiss Count VIII of Plaintiff's Amended Complaint alleging claims of assault and battery against him individually. Under Minnesota law, battery is defined as "an intentional unpermitted offensive contact with another." Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980). Additionally, assault is defined as "an unlawful threat to do bodily harm to another with present ability to carry the threat into effect." Dahlin v. Fraser, 288 N.W. 851, 852 (Minn. 1939).

Plaintiff contends that Defendant Bents worked for CSC as a vendor in a number of capacities, including implementing Defendant CSC's October 11, 2010 performance action plan for the Plaintiff. (Am. Compl. ¶¶ 13–14.) Plaintiff alleges that "[w]hile employed with Defendant CSC, [she] was unlawfully touched and harassed by Defendant Bents." (Id. ¶ 101.) She pleads that Defendant Bents' "unlawful touching and verbal harassing caused a reasonable fear in [her] that she would be physically harmed and actually caused injury."

(Id. ¶ 102.)  Specifically, Plaintiff states that the alleged assault and battery included the following conduct: "inappropriate touching; sexual innuendos; sexual overtures; and sexual advances by Defendant Bents while working, in the course of business, for Defendant CSC."  (Id. ¶ 104.)  Plaintiff further claims that "[a]s a direct and proximate cause of Defendant Bents' actions . . . [she] has suffered and will continue to suffer humiliation, loss of earnings, embarrassment, mental and emotional distress and other pain and suffering." (Id. ¶ 105.)

Viewing the facts in the light most favorable to the Plaintiff, the Court determines that she has plausibly stated a claim against Defendant Bents for assault and battery. Plaintiff alleges that Defendant Bents inappropriately touched her and that such conduct was "unwelcome and offensive."  Furthermore, Plaintiff alleges that Defendant Bents verbally harassed her by making unwelcomed sexual advances with the intent and present ability to carry out such acts.  Accordingly, the Court denies Defendant Bents' Motion to Dismiss Count VIII of Plaintiff's Amended Complaint.

### III.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.  Defendant CSC's Motion to Dismiss [Doc. No. 6] Counts I and V of Plaintiff's Amended Complaint alleging sexual harassment under the MHRA and Title VII is **GRANTED WITH PREJUDICE**;

2.  Defendant CSC's Motion to Dismiss [Doc. No. 6] Counts III and IV of Plaintiff's Amended Complaint alleging violations of the Minnesota

Whistleblower Act is **GRANTED WITH PREJUDICE**;

3. Defendant CSC's Motion to Dismiss [Doc. No. 6] Count VII of Plaintiff's Amended Complaint alleging a 42 U.S.C. § 1983 claim is **GRANTED WITH PREJUDICE**;

4. Defendant CSC's Motion to Dismiss [Doc. No. 6] Counts II and VI of Plaintiff's Amended Complaint alleging reprisal and retaliation under the MHRA and Title VII is **DENIED**; and

5. Defendant Bents' Motion to Dismiss [Doc. No. 12] Count VIII of Plaintiff's Amended Complaint alleging claims of assault and battery against him individually is **DENIED**.

Dated: February 8, 2013          s/Susan Richard Nelson
                                    SUSAN RICHARD NELSON
                                    United States District Judge